In re James M. SMITH, Debtor.

James M. Smith, Appellant,

v.

Sidney Lachter, Sandra
Lachter, Appellees.

BAP No. AZ–05–1116–SBMo.

Bankruptcy No. 95–06077–PHX–RTB.

Adversary No. 00–00539–PHX–RTB.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Jan. 20, 2006.

Filed Sept. 26, 2006.

Ronald J. Ellett, Phoenix, AZ, for Debtor.

Before: SMITH, BRANDT, and MONTALI, Bankruptcy Judges.

## OPINION

SMITH, Bankruptcy Judge.

James M. Smith ("Debtor") appeals a declaratory judgment entered on May 20, 2005, which determined that a state court judgment held by Sidney and Sandra Lachter ("Lachters") was timely renewed. We REVERSE and REMAND.

## I. FACTS[1]

This matter is reminiscent of that old Beatles' standard, "The Long and Winding Road," a brooding song about a road that never ends.[2] One can only hope that, with this opinion, the end of the road is indeed in sight.

Neepawa Enterprises, Ltd. obtained a judgment in state court ("Judgment") against Debtor in April 1987 and assigned its rights thereunder to the Lachters. Pursuant to an Arizona law that requires judgments be renewed every five years, the Lachters timely renewed the Judgment on March 6, 1992.[3]

Debtor filed a chapter 13[4] petition on July 13, 1995, which was subsequently converted to a chapter 7. Debtor received his discharge on November 12, 1996.

On September 27, 1996, the Lachters filed a complaint to determine the dischargeability of the Judgment under § 523(a)(2). The bankruptcy court entered a non-dischargeability judgment in favor of the Lachters on November 24, 1998.[5] We affirmed the bankruptcy

1. This appeal is related to a prior appeal decided by this panel in *Smith v. Lachter (In re Smith)*, 293 B.R. 220 (9th Cir. BAP 2003) (*"Smith II "*) and a subsequent Arizona Supreme Court decision, *Lachter v. Smith (In re Smith)*, 209 Ariz.343, 101 P.3d 637 (2004) (*"Smith"*).

2. Paul McCartney/John Lennon, circa 1970:
   *The long and winding road*
   *That leads to your door*
   *Will never disappear*
   *I've seen that road before . . . .*

3. Under Arizona law, a judgment creditor may renew a judgment by filing a renewal affidavit within ninety days prior to the five year expiration of the entry of judgment. Ariz.Rev.Stat. ("A.R.S.") § 12–1612(B). Additional and successive renewal affidavits may be made following the same formality. A.R.S. § 12–1612(E). Thus, in the normal course of things, the deadline to file the next renewal would have been March 6, 1997.

4. Absent contrary indication, all "Code," chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23, as the case from which these appeals arise was filed before its effective date (generally October 17, 2005).

5. A minute entry/order was entered prior to the final judgment on October 24, 1997.

court's ruling in *Smith v. Lachter (In re Smith)*, 242 B.R. 694 (9th Cir. BAP 1999) ("*Smith I* ").

On November 7, 1997, eight months after the March 6, 1997 statutory deadline for renewing the Judgment, the Lachters filed another renewal ("November 1997 renewal").[6] Nearly three years later, on August 29, 2000, the Lachters filed a second complaint in the bankruptcy court, this time seeking a determination that the November 1997 renewal was timely. On cross motions for summary judgment, the bankruptcy court concluded that the November 1997 renewal was timely under § 108(c)(2)[7], finding that the last date to renew was tolled until the entry of the nondischargeability judgment, i.e., November 24, 1998. Debtor once again appealed to this panel.

In *Smith II*, we determined that the bankruptcy court erred by applying § 108(c)(2), rather than § 108(c)(1).[8] In other words, we held that § 108(c)(1) produced the "later" deadline for filing the renewal. In so doing, we presumed that Arizona law provided for a suspension of the requirement to file a renewal during the pendency of the bankruptcy, and

therefore calculated that the Lachters had until July 6, 1998, to renew the Judgment.[9] *Smith II*, 293 B.R. at 226.

We were, however, concerned about the efficacy of the November 1997 renewal in light of the presumed tolling period and the requirement under A.R.S. § 12–1612(E) that a renewal affidavit of judgment be filed within 90 days prior to the expiration of the judgment. If the expiration of the deadline to renew the Judgment was tolled to July 6, 1998, could the renewal be filed *earlier* than April 7, 1998? Uncertain of the answer, we remanded the matter to the bankruptcy court for clarification and suggested that the question might be appropriate for certification to the Arizona Supreme Court. *Id.* at 227.

On April 30, 2004, the bankruptcy court certified two questions to the Arizona Supreme Court:

A) When a pending bankruptcy case is unresolved and the time period under Arizona law to file the required affidavit of renewal of judgment has passed, under what circumstances, if any, is the time period under A.R.S. § 12–1551 extended or otherwise changed to allow the judgment credi-

---

**6.** On December 5, 1997, the Lachters filed a supplement to the affidavit, attaching the bankruptcy court's signed minute order/entry declaring the debt non-dischargeable.

**7.** Section 108 provides, in relevant part:
(c) [I]f applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) 30 days after notice of the termination or expiration of the stay under § 362 ... as the case may be, with respect to such claim.

11 U.S.C. § 108(c).

**8.** We concluded that the bankruptcy court improperly interpreted § 108(c)(2) to toll the renewal deadline to the date of the entry of the non-dischargeability judgment rather than simply 30 days following the termination of the stay. *Smith II*, 293 B.R. at 224.

**9.** We determined that a stay was in effect for 487 days, i.e., from the petition date (July 13, 1995) until Debtor received his discharge (November 12, 1996). *Smith II*, 293 B.R. at 226. As a result, we arrived at the July 6, 1998 deadline by adding 487 days to the March 6, 1997 expiration date of the Judgment (March 6, 1997 + 487 days = July 6, 1998). *Id.*

tor to file a timely affidavit of renewal of judgment?

B) Were either of the affidavits of renewal of judgment filed by the Lachters timely filed? [10]

*Smith,* 101 P.3d at 638.

As to the first question, the Arizona Supreme Court responded that a "judgment creditor's inability to enforce a judgment during the initial or a subsequent statutory five-year period, whether because of a bankruptcy stay or other reasons, does not extend the deadline imposed by A.R.S. §§ 12–1551 and 12–1612 to file a renewal affidavit." *Smith,* 101 P.3d at 639. It reasoned that the filing of an affidavit of renewal was merely a ministerial act intended to notify parties in interest of the existence of a judgment, and did not serve as a vehicle for enforcing the judgment. *Id.* Thus, the court concluded, the act of renewing a judgment was unaffected by a pending bankruptcy case. *Id.*

In addressing the second question, the Arizona court, "start[ing] from the premise that the BAP ha[d] ruled as a matter of federal law that § 108(c)(1) extended the time for filing the renewal affidavit", held that the November 1997 renewal was timely even though the filing date was more than 90 days prior to July 6, 1998. *Id.* at 640. Expanding on our analysis of § 108(c)(1) in *Smith II,* the court explained that a renewal affidavit of judgment filed any time from December 6, 1996 (90 days prior to the original March 6, 1997 deadline) to the extended deadline of July 6, 1998 would be timely. *Id.* Based on these findings of the Arizona court, the bankruptcy court entered a declaratory judgment in favor of the Lachters.

Debtor appeals.

## II. ISSUE ON APPEAL

Whether the bankruptcy court erred in determining that the Lachters timely renewed the Judgment.

## III. JURISDICTION

Federal subject matter jurisdiction is founded under 28 U.S.C. §§ 1334(b) and 157(b). We have appellate jurisdiction over final orders pursuant to 28 U.S.C. §§ 158(b)(1) and (c)(1).

## IV. STANDARD OF REVIEW

■ We review a bankruptcy court's legal conclusions, including its interpretation of the Bankruptcy Code and state law, *de novo. Roberts v. Erhard (In re Roberts),* 331 B.R. 876, 880 (9th Cir. BAP 2005).

## V. DISCUSSION

Debtor contends that because the Arizona Supreme Court determined that the statutory time to renew a judgment is not tolled by a pending bankruptcy, the bankruptcy court erred when it entered judgment in favor of the Lachters. Accordingly, the November 1997 renewal should be deemed untimely. We agree, however, understanding why this is so requires a close examination of applicable federal and state law.

A. *The November 1997 renewal affidavit was untimely because the time for renewing the Judgment was not extended under § 108(c)(1).*

Section 108(c) applies to the renewal of state court judgments. *Smith II,* 293 B.R. at 223; *Spirtos v. Moreno (In re Spirtos),* 221 F.3d 1079, 1080–81 (9th Cir.2000). The time for renewing a state court judgment does not expire until the *later* of the applicable state law period or thirty days

---

**10.** By the word "either," we assume the bankruptcy court is referring to either the November 1997 filing of the renewal affidavit or its supplement filed on December 5, 1997.

after the termination of the automatic stay. 11 U.S.C. § 108(c)(1) & (c)(2); *Smith II*, 293 B.R. at 224–25. So, what was the applicable period under state law in this case?

■■■ In *Smith II*, we interpreted Arizona law as tolling the time for filing a renewal affidavit during the pendency of a bankruptcy case. 293 B.R. at 225–26. We did not, however, enjoy the benefit of the Arizona Supreme Court's analysis of the issue. Subsequent to *Smith II*, the Arizona court ruled unequivocally that "[u]nder Arizona law, the time to file an affidavit of renewal of judgment is not changed or extended by the pendency of a bankruptcy case." *Smith*, 101 P.3d at 640.[11] In matters of state law, we are compelled to defer to the interpretation given such law by the state's highest court. *See Marcus v. McKesson Drug Co. (In re Mistura, Inc.),* 22 B.R. 60, 62 (9th Cir. BAP 1982). Accordingly, we find that Arizona state law did not suspend the time for the Lachters to file the renewal affidavit during the pendency of the bankruptcy case.

■■■ As we observed in *Smith II*, the phrase "suspension of such period" refer-enced in § 108(c)(1) refers to "either state or federal nonbankruptcy law." 293 B.R. at 225. As a result, § 108(c)(1) does not operate without regard to existing nonbankruptcy law to stop the running of any periods of limitation. *Id.; see also Rogers v. Corrosion Prods., Inc.,* 42 F.3d 292, 297 (5th Cir.1995); *Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1073 (2d Cir.1993) ("The reference in § 108(c)(1) to 'suspension' of time limits clearly does not operate in itself to stop the running of a statute of limitations; rather, this language merely incorporates suspensions of deadlines that are expressly provided in *other* federal or state statutes."). We have previously rejected the minority view to the contrary. *Smith II*, 293 B.R. at 226 n. 7. Absent state law suspending the time for filing the renewal affidavit, the original limitation date of March 6, 1997 applied. No additional time was afforded under § 108(c)(1).[12]

The Lachters did not file an affidavit of renewal until November 11, 1997, more than eight months after the renewal deadline of March 6, 1997. We therefore conclude that the bankruptcy court erred in finding that the renewal was timely filed.[13]

11. We note that the Arizona court's conclusion is based in part on its view that, unlike the *enforcement* of a judgment, the automatic stay is not implicated by the "ministerial" act of filing the renewal affidavit. *Morton v. Nat. Bank of New York City (In re Morton),* 866 F.2d 561, 564 (2nd Cir.1989) (automatic stay does not apply to the filing of an extension of a statutory lien); *accord Wussler v. Silva (In re Silva),* 215 B.R. 73, 77 (Bankr.D.Idaho 1997) (the filing of an application for renewal of judgment pursuant to California law is not a violation of the automatic stay). *But see In re Lobherr,* 282 B.R. 912, 917 (Bankr.C.D.Cal. 2002) (the filing of a renewal application pursuant to California law violates the automatic stay). We declined to address the issue in *Smith II*, 293 B.R. at 223.

12. In *Smith II*, we held that because the stay terminated as of November 12, 1996, when Debtor received his discharge, the deadline to renew the Judgment under § 108(c)(2) was December 12, 1996 (30 days after the expiration of the stay). *Smith II*, 293 B.R. at 226. Under § 108(c)(1), the Judgment would expire on March 6, 1997. As the "later" of the two dates under § 108(c) was the original March 6, 1997 date, our conclusion that § 108(c)(1) is the applicable subsection remains unchanged.

13. As in *Smith II*, we need not decide whether a renewal of judgment is a violation of the automatic stay under § 362 as the issue necessary to the disposition of the appeal before us.

B. *The Arizona Supreme Court's statement that the November 1997 renewal was timely based on assumptions made by this panel in Smith II does not render the renewal timely.*

In *Smith II,* we erroneously presumed that Arizona law might provide a tolling period for the renewal of a judgment upon the filing of a bankruptcy petition. The second question posed to the Arizona court regarding the efficacy of a renewal filed more than 90 days prior to the expiration date of the judgment reflected that erroneous possibility. The Arizona court was careful to point out that its response was narrowly premised on the BAP's ruling "as a matter of federal law that § 108(c)(1) extended the time for filing the renewal affidavit in this case" for 487 days and that, "under these circumstances[,]" the November 1997 renewal would have been timely. *Smith,* 101 P.3d at 640. The Arizona court's response to a specific question, itself based upon a flawed assumption, does not undermine or contradict its clear finding that nothing in A.R.S. §§ 12–1551 and 12–1612 provide for a suspension of the time for filing a renewal of judgment during the pendency of a bankruptcy case.

## VI. CONCLUSION

For the foregoing reasons, we RE-VERSE the judgment entered by the bankruptcy court finding that the Lachters had timely renewed the Judgment and REMAND for entry of judgment in favor of Debtor.